# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Patrick Guess, | ) Civil Action No. 9:13-2260-TLW-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND** |
| | ) **RECOMMENDATION** |
| John McGill, Holly Scaturo, Robert | ) |
| Stevenson, III, William Byars, and | ) |
| SCDOC Chaplain Services, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas, Fifth Judicial Circuit.[1] The Defendants removed this action to United States District Court pursuant to 28 U.S.C. § 1441, asserting that the Complaint raises issues of federal statutory and constitutional law.

Plaintiff, who is proceeding pro se, is a person committed to the custody of the South Carolina Department of Mental Health under the terms of the Sexually Violent Predator Act, S.C. Code Ann. § 44-48-10, et seq. Plaintiff alleges that he is a member of the Muslim faith, and that the named Defendants have violated his religious rights protected by the First Amendment to the United

---

[1]There were originally more than one Plaintiff listed on the Complaint. However, as Patrick Guess was the only Plaintiff who signed the Complaint, the Clerk of Court was directed to terminate the non-signing "Plaintiffs", who were not proper parties to this action. See Court Docket No. 9, at n. 1.

1



States Constitution, as well as his statutory rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 27, 2014. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on March 28, 2014, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on May 16, 2014, following which the Defendants filed a reply memorandum on June 10, 2014.

The Defendants' motion is now before the Court for disposition.[2]

### Background and Evidence

Plaintiff alleges in his verified Complaint[3] that he is a resident with the Sexually Violent Predator Treatment Program (SVPTP), which is administered by the South Carolina Department of Mental Health and housed in the Edisto Unit of the Broad River Correctional Institution.[4] Plaintiff alleges that he is a Muslim, and that on July 1, 2013, Muslim and Wicca practitioners were summoned to a meeting presided over by the Defendant Scaturo, Director of the

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[4]The Broad River Correctional Institution (BRCI) is part of the South Carolina Department of Corrections (SCDC) prison system.



SVPTP, with other departmental staff also being present. Plaintiff alleges that at this meeting all

Muslim and Wicca practitioners were told that, starting immediately, they were not allowed to, and

prohibited from, practicing their religion without "a leader". Plaintiff alleges they were told that this

action had been authorized by Michael Brown with the South Carolina Department of Corrections'

Chaplain Services.[5] Plaintiff alleges that he told the Department Employees present that they were

violating his civil and human religious rights, but that "all questions were ignored", and that Scaturo

told them that the decision was "final". Plaintiff further alleges that, subsequently, the Department

of Mental Health posted a memorandum which reiterated that all Muslim and Wicca practitioners

were not allowed to practice their religion without a "leader".

Plaintiff also alleges that Muslims are denied and prohibited the right to perform

congregational prayers (SALAT), the right to hold and perform their obligatory "JUMU'AH" prayer

services on Friday between the times of 12:30 p.m. to 1:30 p.m., denied the right to congregate and

hold "AL-ISLAMIC" study groups, denied the right to openly wear their Kufis (male Muslim head

garments), and denied their right to receive or purchase scented oils. Plaintiff alleges that the SCDC

and Department of Mental Health are violating his religious rights by not allowing him to openly

---

[5]While Plaintiff has listed "SCDOC Chaplain Services" as a party Defendant in this case, Brown is not himself named as a Defendant. Further, the "SCDOC Chaplain Services" is not a proper party Defendant with respect to Plaintiff's constitutional claims, as collective characterizations such as "management", "office", or "staff" are not "persons" subject to suit under 42 U.S.C. § 1983, the statutory mechanism for pursuing a constitutional claim in this Court. Cf. Sims v. Medical Staff of Cook County D.O.D., No. 94-1971, 1994 WL 687496 at *1 (N.D.Ill. Dec. 8, 1994) [the term . . . staff "denotes neither a person nor an entity subject to suit because of the lack of a legal existence...the [ ] Staff will not be a party to this action."]; cf. Revene v. Charles County Commissioners, 882 F.2d 870, 874 (4th Cir. 1989); Hancock v. Washtenaw County Prosecutor's Office, 548 F.Supp. 1255 (E.D.Mich. 1982); see Gomez v. Toledo, 446 U.S. 635, 640 (1980) [in order to state a cause of action under § 1983, a plaintiff must allege that he was deprived of a federal right by a "person" acting under color of state law].



practice his religion, that the Department of Mental Health has refused to provide Chaplain Services to care for SVPTP residents, and that the Defendant has further refused to provide Muslims "adequate, clean spaces to practice our religion". Plaintiff alleges that Scaturo has told him that the Department does not have sufficient space for this purpose.

Plaintiff also alleges that he has submitted many Request to Staff forms about not being able to adequately and fully practice his religion, including not being able to perform his prayers (SALAT) in his cell because his cell is extremely small (Plaintiff alleges he was told to turn in another direction, making a "mockery of my Islamic way of praying), that he is denied his right to pray outside of his cell or in congregation with his fellow Muslim brothers, and that he and other Muslims were denied a request to go outside "to sight (sic) the moon to start our fast for month RAMADAN", resulting in he and the other Muslims starting their fast two days late. Plaintiff has attached to his Complaint a copy of a "Resident's Grievance Form" dated July 1, 2013 concerning the meeting that was held by Scaturo, which indicates that it was returned unprocessed for failure to comply with the Grievance Policy. Plaintiff seeks both certain declaratory and/or injunctive relief, as well as monetary damages. See generally, Verified Complaint.

In support of summary judgment in this case, the Defendant Scaturo has submitted an affidavit wherein she attests that she is the Director of the SVPT Program. Scaturo attests that the residents of this program are housed in the Edisto and Congaree Units of the Broad River Correctional Institution pursuant to an interagency agreement between the Department of Mental Health and the SCDC. Scaturo further attests that the interagency agreement includes a provision entitled "Chaplain Services", which provides that the SCDC will make available to the Department of Mental Health the Chief of the Pastoral Services Branch for consultation and advisement about



religious issues of SVPTP residents.  Scaturo attests that the SVPT Program utilizes the Chaplaincy Service at the Broad River Correctional Institution to address issues related to religious or pastoral services provided to SVPTP residents.

Scaturo attests that the SVPTP follows the SCDC Policy on "Inmate Religion" to the extent not inconsistent with the therapeutic or safety issues unique to the SCPTP mission and population.  Scaturo attests that the SVPTP Program does not itself have any Chaplains or persons qualified on religious issues, and for that reason and consistent with the interagency agreement, the decision by the BRCI Chaplaincy Service on such issues as books, publications, and others materials as well as what other religious items are permitted are followed by the SVPTP staff.  Scaturo attest that the SVPTP also utilizes SCDC Services for meeting religious dietary requirements, as well as for approval of religious volunteers and visitors.

Scaturo attests that, effective July 1, 2013, the SVPTP implemented a policy, with the recommendation of the BRCI Chaplaincy Service, of not allowing SVPTP residents to serve in leadership roles over other residents in any religious worship, prayer or study groups.  Rather, SVPTP residents were advised at that time that any group religious functions would require the participation and supervision of a volunteer leader from the community who was approved by the BRCI Chaplaincy Service.  SVPTP residents were further advised that they would be required to recruit a volunteer group leader for their group in order to have any group activities, including group worship or group study.  Therefore, effective July 1, 2013, members of *all* religious groups were not allowed to participate in group activities without an approved volunteer leader participating, and in the absence of an approved volunteer leader residents would only be allowed to conduct their religious practices on an individual, and not a group, basis.  Scaturo attests that resident led groups are not

5



appropriate in the SVPTP setting, where the residents include persons with serious mental illnesses, persons with predatory tendencies, persons who are manipulators, persons who are vulnerable to manipulation or intimidation or undue influence, and persons of various degrees of intellectual and adaptive functioning, and that this policy was implemented because of therapeutic and safety concerns associated with placing residents in a leadership position over other residents.

Scaturo further attests that Plaintiff has numerous opportunities to exercise his religious beliefs within the SVPTP. He is allowed to participate in Muslim practices including the five daily prayers which may be performed in his own cell, he has been approved for and receives a pork free diet as provided by the SCDC for all Muslim inmates, and he is allowed to participate in the Ramadan fast as documented by an email from Chaplain Michael Brown dated July 2, 2013.[6] With respect to Plaintiff's complaint that he was not permitted to go outside at night to "site the moon" to determine the date for the start of Ramadan in July 2013, Scaturo attests that this was not permitted because a time table for Ramadan had already been provided based on information from the Senior Muslim Chaplain at the SCDC.[7] Scaturo further attests that Plaintiff is allowed to possess a Qu'ran and other religious books and materials, that he is allowed to purchase religious materials directly from the publisher although any books or other written materials requested do require approval from the BRCI Chaplaincy Service, that Plaintiff has been approved for numerous purchases of religious books by Chaplaincy Service, and that to the extent Plaintiff is requesting the right to order and possess religious oriented DVDs, that is not permitted for security reasons as DVDs can

---

[6]A copy of this July 2, 2013 email is attached to Scaturo's affidavit as Exhibit A.

[7]A copy of a memorandum from then SCDC Director William Byars with an attached time table that addressed the observance of Ramadan is attached to Scaturo's affidavit as Exhibit B.



be easily broken and utilized as a weapon.

Scaturo attests that, to the extent Plaintiff is seeking to build a library of Muslim books and materials, that is not allowed because there is no space or location for that purpose, because the SVPTP has a policy restricting inmate property for security reasons, and because if Muslim inmates were allowed the privilege of having their own library, then every other faith group would seek the same privilege, and the SVPTP simply cannot accommodate that request.[8] Scaturo further attests that Muslim inmates are allowed to possess and wear a Kufi, but are not permitted to purchase and possess oils, because such items have been specifically disapproved for security reasons because they can be used to mask other odors such as alcohol, marijuana and drugs. Scaturo attests that the interagency agreement requires the SVPTP policies on personal property and contraband to be consistent with SCDC policies, and therefore on issues related to personal property and contraband, the SVPTP follows the directives of the BRCI.

Scaturo also attests that the reason Plaintiff cannot participate in the Friday congregational pray called "Jumu'ah" is because there has been no volunteer leader from the community to hold that service with the SVPTP Muslim residents, and that to her knowledge no such volunteer has even been recruited by the Muslim residents. Scaturo attests, however, that Muslim residents are permitted to schedule group worship including a Jumu'ah service on Fridays as well as a study group and potentially other group activities with an approved volunteer leader. Further, Muslim inmates (including the Plaintiff) are allowed to exercise their religious beliefs individually, and are also allowed visits by Muslim ministers or volunteers for individual pastoral counseling or

---

[8]With respect to books, magazines and other publications, a copy of the "Book and Magazine" Policy for the SVPTP is attached to Scaturo's affidavit as Exhibit C.



instruction, provided the volunteers complete the approval process for volunteers as required by the SCDC. See generally, Scaturo Affidavit, with attached Exhibits.

The Defendants have also submitted an affidavit from Allyson Sipes, who attests that she is the Clinical Chief Psychologist for the SVPTP. Sipes attests that in this position, she has been involved with the planning, directing and coordinating of the psychological and clinical services for the SVPTP, and has also provided clinical supervision and training to SVPTP treatment team staff. Sipes attests that she holds a Doctor of Clinical Psychology degree, a Master of Arts in Clinical Psychology degree, and is a licensed Clinical Psychologist, and that she is responsible for all clinical program development including the creation and implementation of clinical training programs, groups supervision, the improved level/privilege system for residents, and the enhanced treatment programs.

Sipes attests that SVPTP residents have requested to facilitate or lead groups of various designs, including self-help groups, religious groups, interest groups, and other activities, and that these requests have historically been denied due to therapeutic and safety concerns. Sipes attests that, in her professional opinion, the assignment or designation of an SVPTP resident to be a leader of a group, religious or otherwise, is therapeutically inappropriate given the dynamics of this population. Sipes attests that the SVPTP population has residents with histories of manipulating and being manipulated, as well as residents of various intellectual and adaptive functioning, and that having a resident lead a group would place him in a position of power or authority that could result in the opportunity for manipulation or inappropriate influence. Further, being in a demanding position of leadership could result in a disproportionate focus on religious endeavors as opposed to treatment. Sipes further attests that there is also no guarantee of the resident's status as an

8



appropriate religious leader, and that promotion to such status could therefore endorse an inappropriate mentor for other residents. Finally, Sipes attests that there are concerns that resident led religious groups could be used for improper or inappropriate purposes or as opportunities for planning, coordinating, encouraging or fostering improper or inappropriate conduct.

Sipes attests that the dynamics of all groups need to be closely monitored for therapeutic and physical safety, whether the groups are for therapeutic, religious, club or other activities, and that as such these groups are all led and monitored by staff or identified appropriate outside leaders. Sipes attests that staff monitoring and involvement are essential to the safety and well being of the residents, staff and visitors, as well as the institution.

Sipes attests that SVPTP residents who wish to practice their religious beliefs in a group setting are allowed to do so, but only with the assistance and on-site participation of a volunteer group leader as approved by the SCDC Chaplaincy Service. Sipes attests that, in her opinion, this policy is necessary to serve the therapeutic and safety concerns she has discussed. Furthermore, Sipes attests that, in her opinion, an exception for religious groups is not feasible or workable both because of the therapeutic and safety concerns she has discussed, as well as because it is critical in this therapeutic setting that certain persons or groups of persons not be viewed as being given favorable treatment or different treatment than others. See generally, Sipes Affidavit, with attached exhibit (Vitae).

Finally, the Defendants have submitted an affidavit from Michael Brown, who attests that he is the Senior Chaplain at the BRCI. Brown attests that he is familiar with the Plaintiff, who is part of the SVPT Program. Brown attests that, pursuant to the interagency agreement between the Department of Mental Health and the SCDC, the Chaplains at BRCI, himself included, provide

9



advice and consulting services for the SVPTP administrators, although the SCDC does not provide direct pastoral services or counseling to SVPTP residents. Brown attests that he reviews requests for religious books and written materials by SVPTP residents, and has approved numerous requests made by the Plaintiff for religious books. Brown specifically attests that he has approved a "vast majority" of Plaintiff's requests, and has attached to his affidavit as Exhibit A copies of book requests forms submitted by the Plaintiff in 2012 and 2013, which demonstrate that all of Plaintiff's requests except one were approved. Brown attests that the one book that was not approved was not approved at the request of Chaplain Tamir Mutakabbir, the Senior Muslim Chaplain, because that book contained disruptive material and was not a primary source book for the Muslim religion. Brown further attests that Plaintiff is permitted to possess a Qu'ran and Sunnah.

Brown attests that in January 2012 Plaintiff made a request for a Muslim prayer rug, which was approved, while a separate request Plaintiff made for oils was denied for security reasons, primarily because Islamic oils are aromatic and can be used by SVPTP residents to mask or hide other odors including the smells of alcohol, marijuana and other drugs and cigarettes, all of which are contraband. Brown has attached to his affidavit as Exhibits B and C copies of Plaintiff's approved request for a prayer rug, and denied request for oils.

With respect to the use of resident leaders for religious group worship and study groups, Brown attests that he concurred with the ultimate decision whereby SVPTP administrators adopted a policy requiring any group religious functions to be led and supervised by a volunteer leader from the community who was approved through the SCDC's volunteer approval process. Nonetheless, Brown attests that Plaintiff was provided with numerous opportunities to exercise his religious beliefs, as he is allowed the five daily prayers (Salat) which may be performed individually



in a residence room, and he is allowed to participate in group worship in the Jumu'ah service on Fridays as well as to participate in study groups if there is an approved volunteer available to lead those activities.  Additionally, even if no volunteer is available, a Muslim resident in the SVPTP can still worship individually, including making the Jumu'ah prayer on Fridays.

Brown attests that Plaintiff is also permitted to participate in the Ramadan fast, for which he has been approved in the past, that he has specifically approved Plaintiff to receive the same port-free diet that other Muslim inmates receive, and that he has also been allowed a prayer rug and Kufi.  Brown attests that Muslim residents are also allowed visits by Muslim ministers or volunteers for individual pastoral counseling or instruction, as long as those volunteers are approved through the SCDC approval process.  See generally, Brown Affidavit, with attached Exhibits.

As attachments to his memorandum in opposition to the Defendants' motion for summary judgment, Plaintiff has attached a copy of a memorandum dated March 21, 2012 from Sheila Lindsa, Resident Advisor at the Edisto Unit, advising that weekly Friday prayer sessions would be held in Room 101 provided a staff member was in the room with them or in the area for monitoring, or that weekly Friday prayer sessions could be held in front of the mailboxes, from 1:30 to 2:15 p.m. sharp.  This memorandum further advised that five daily prayer sessions would be done in the detainees' rooms.  Plaintiff has also provided a copy of a memorandum to the Plaintiff from the Defendant Scaturo dated July 24, 2013, notifying Plaintiff of the disapproval of one of his book requests by the SCDC Chaplaincy, as well as copies of numerous Request to Staff forms detailing his religious requests and complaints, copies of some grievance documents and responses, and a medical request form from July 24, 2013 concerning a rash Plaintiff was complaining of, and



indicating that Neutrogena soap had been ordered for this condition.  See generally, Plaintiff's

Exhibits.

## Discussion

   The Defendants have moved for summary judgment on all of Plaintiff's claims.

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the

pleadings is appropriate.  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).

Once the moving party makes this showing, however, the opposing party must respond to the motion

with specific facts showing there is a genuine issue for trial.  Baber v. Hosp. Corp. of Am., 977 F.2d

872, 874-75 (4th Cir. 1992).  Further, while the Federal Court is charged with liberally construing

a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see

Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal

construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts

which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material

fact where none exists.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).  Here, after

careful review and consideration of the arguments and evidence submitted, the undersigned is

constrained to conclude that the Defendants are entitled to summary judgment in this case.



# I.

## (Constitutional Claim)

As a civilly committed inmate, Plaintiff has a liberty interest in receiving reasonable care in reasonably non-restrictive conditions of confinement.  See Youngberg v. Romeo, 457 U.S. 307, 324 (1982).  In considering the constitutionality of the conditions of Plaintiff's confinement, he most closely resembles the custody status of a pre-trial detainee.  Lingle v . Kibby, 526 Fed.Appx. 665, 667 (7th Cir. Apr. 15, 2013) [Civilly committed persons are treated as pretrial detainees]; Valbert v. South Carolina Dep't. of Mental Health, No. 12-1973, 2013 WL 4500455 at * 9 (D.S.C. Aug. 20, 2013) [same]; Treece v. McGill, No. 08-3909, 2010 WL 3781695 at * 4 (D.S.C. Sept. 21, 2010)["A civilly committed individual under the SVPA most closely resembles the custody status of a pre-trial detainee."] (quoting LaSure v. Doby, No. 06-1527, 2007 WL 1377694 at * 5 (D.S.C. May 8, 2007); Tillman v. Dixon, No. 10-5032, 2011 WL 5119187 at * 9 (W.D.Wash. Aug. 12, 2011)[The rights of those civilly committed are analyzed using same standards that apply to pretrial detainees], adopted by, 2011 WL 5118750 (W.D.WAsh. Oct. 27, 2011); cf. Larch v. Gintoli, 04-1962, 2006 WL 895019, at ** 3-4 (D.S.C. Mar. 31, 2006).  Therefore, Plaintiff's conditions of confinement claim is evaluated under the due process clause of the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535, n. 16 (1979); but see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) [Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections].

Considered pursuant to this standard of review, Plaintiff has failed to submit evidence sufficient to create a genuine issue of fact as to whether any named Defendant has violated his constitutional rights.  First, although detained persons retain their First Amendment Rights, there is



nothing unconstitutional about reasonable restrictions being applied by supervisory personnel to those First Amendment Rights in order to maintain order and the security of the institution.  Cf. In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell, 441 U.S. at 547)).[9]  As a civilly committed inmate, liability may be imposed for the conditions under which Plaintiff is being held only when the policies and practices at issue can be deemed arbitrary and capricious.  Cf. Youngberg, 457 U.S. at 323 [liability may be imposed only when evidence is submitted to show that "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment"]; Patten v. Nichols, 274 F.3d 829, 843 (4th Cir. 2001)[Defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional"].

Nothing in the evidence presented to this Court shows any such conduct by any named Defendant or any other mental health official.  Not only does the Defendants' evidence detail the ability of Muslim detainees to practice their religion, receive religious material, and retain books or objects associated with their religion and religious practices (with the limited exceptions noted in the

_____

[9]The Court may rely on cases from a prison setting in addressing the religious rights of SVPTP residents.  Cf. Beaulieu v. Ludeman, 690 F.3d 1017, 1028 (8th Cir. 2012); Lingle, 526 Fed. Appx. at 667; Treece v. S.C. Dept. of Mental Health, No. 08-3909, 2010 WL 3781726 (D.S.C. Feb. 19, 2010).



evidence), but Plaintiff's own exhibits (principally his Request to Staff Member forms) fail to show that Plaintiff is being denied the ability to practice his religion.[10]  The evidence reflects that Plaintiff is allowed to conduct his five daily prayers as well as his Friday prayers in group sessions with a volunteer leader present or in his cell, he has been approved for and receives a pork-free diet as requested,[11] he is allowed to participate in the Ramadan fast, that he is allowed to purchase religious materials directly from the publisher, that he is allowed to posses and wear a Kufi,[12] that he is allowed

---

[10]These Request to Staff Member forms primarily relate to Plaintiff not being allowed the "oils" he wishes to possess, his complaint that materials must first be approved by the Chaplaincy office, his inability to possess DVDs and CDs, the Defendants' refusal to maintain a separate "Islamic library", and not being allowed to go outside at night to "spot the moon", all of which were handled pursuant to the polices and procedures of the institution as outlined in the evidence, and for the reasons stated.  Nothing in Plaintiff's exhibits shows that any of these policies or decisions was not based on a legitimate penological reason, or were arbitrary or capricious.  Turner v. Safley, 482 U.S. 78, 89 (1987) [". . . when a prison regulation impinges on inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests]; Overton v. Bazzetta, 539 U.S. 126, 132 (2003)  ["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"]; Ajaj v. United States, 479 F.Supp.2d 501, 539 (D.S.C. 2007)["Courts have long held that religious practices may be restricted by prison authorities if the restrictions imposed are reasonably related to legitimate, penological interests . . . ."]; Patten, 274 F.3d at 843 [Defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional"].

[11]Plaintiff's complaint with respect to this claim appears to be that he does not like the food provided, and wants to be able to purchase his own.  Plaintiff has no such constitutional right.  Cf. Ayers v. Uphoff, 1 Fed.Appx. 851, 855 (10th Cir. 2001) [Where prisoner complained about substitute food that he was being provided on a special diet, the court held that "Plaintiff [had] no constitutional right to preselect foods or demand a certain variety of foods", and that "Plaintiff's dissatisfaction with the menu at the prison [was] not sufficient to support an Eighth Amendment claim."].

[12]Plaintiff's statement in his complaint about his Kufi is lacking in any evidentiary support.  Plaintiff makes only a general and conclusory claim concerning his Kufi, while there is no indication in the material before the Court that Plaintiff is not allowed a Kufi.  House v. New Castle County,
(continued...)



to possess a prayer rug, and that he is allowed visits by Muslim ministers or volunteers for individual pastoral counseling or instruction.  The undersigned can discern no constitutional violation in this evidence.  House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Sylvia Dev. Corp. v. Calvert County, MD., 48 F.3d 810,818 (4th Cir. 1995)[explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range or reasonable probability" and that ["[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)].

Plaintiff's complaints essentially consist of not being able to have group meetings with other Muslim detainees unless an outside volunteer is present to lead it, not being able to possess his "oils", and a somewhat confusing complaint about his reading material.[13]  However, there is no evidence that Plaintiff is denied access to books and written materials, as the evidence reflects that Plaintiff has had only one book request denied, and that was on the recommendation of the Senior Muslim Chaplain.  The Defendants have also provided legitimate penological reasons for the Department's "leader" and oil policies.  Indeed, many of the programs or policies of which Plaintiff complains have already been reviewed by the courts and found to pass constitutional muster.  See

---

[12](...continued)
824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; King v. Flinn & Dreffein Eng'g Co., No. 09-410, 2012 WL 3133677, at * 10 (W.D.Va. July 30, 2012)[Finding no genuine issue of material fact where only evidence was "uncorroborated and self-serving testimony"], citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

[13]Plaintiff's other complaint about wanting to go out at night to "site the moon" is patently without merit, as the evidence clearly reflects that Plaintiff is aware of when to start his Ramadan fast.  See Scaturo Affidavit, attached Exhibit B.

16



generally, <u>Shabazz v. Arkansas Dep't of Corrections</u>, 157 Fed.Appx. 944, 946 (8th Cir. Nov. 17, 2005)[Upholding restriction of not allowing Plaintiff to personally perform religious services "upon recognition that prison security may be jeopardized if an inmate is put in a position of religious leadership over other inmates, or if an inmate has the opportunity to use religious services to engage in disruptive communications."]; <u>Savko v. Rollins</u>, 749 F.Supp. 1403, 1409 (D.Md. 1990) [Limitation on the amount of in-cell religious reading material contained in prison regulation is constitutional under <u>Turner</u> standards]; <u>Rodgers v. Shearidin</u>, Nos. 09-1962 & 10-3110, 2011 WL 4459092 at * 7 (D.Md. Sept. 22, 2011)["Restricting group meetings may be necessary to prevent the possibility of riots or gang meetings."]; <u>Johnson Bey v. Lane</u>, 863 F.2d 1308 (7th Cir. 1988)[Regulation prohibiting inmates from conducting their own religious services permissible]; <u>cf</u>. <u>Five Percenters</u>, 174 F.3d at 469 [Finding that the reasons behind the challenged SCDC policy "are not simply legitimate penological interests - they are compelling"]. Particularly with regard to the Respondent's "leader" policy, Plaintiff has provided no evidence whatsoever that he has ever even tried to find and have approved a leader so that the group meetings and prayers he wishes to have can be conducted, or that the Defendants would prohibit these meetings if he did so. <u>Harper v. United States</u>, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; <u>see also</u> <u>Anderson v. Angelone</u>, 123 F.3d 1197, 1198-1199 (9th Cir. 1997)[Prohibition of inmate-led religious services does not violate the First Amendment]; <u>Jones v. Bradley</u>, 590 F.2d 294, 296 (9th Cir. 1979) ["Appropriate restrictions on chapel use, including requiring the presence of an outside



sponsor for chapel meetings, are reasonable to maintain order and security"].[14]

In sum, there is no evidence before the Court sufficient to give rise to a genuine issue of fact that the policies cited and complained of by the Plaintiff are arbitrary or capricious or violate his First Amendment rights. <u>Ajaj</u>, 479 F.Supp.2d at 539 ["Courts have long held that religious practices may be restricted by prison authorities if the restrictions imposed are reasonably related to legitimate, penological interests . . . ."]; <u>Patten</u>, 274 F.3d at 843 [Defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional"]. Therefore, this claim is without merit.

## II.

### (RLUIPA Claim)

Plaintiff has also asserted his claims in this case pursuant to the RLUIPA, which requires a "more searching standard of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness". <u>Wall v. Wade</u>, 741 F.3d 492, 499, n. 10 (4th Cir. 2014) (quoting <u>Loveless v. Lee</u>, 472 F.3d 174, 199 n. 8 (4th Cir. 2006) (internal quotation marks omitted)). The RLUIPA provides that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the government demonstrates that imposition of the burden on that person 1) is in furtherance of a compelling governmental interest, and 2) is the least restrictive means of furthering that compelling governmental interest. <u>See</u> 2 U.S.C.

---

[14]Notably, both the <u>Anderson</u> and <u>Jones</u> decisions referenced hereinabove were cited by the Plaintiff in his brief.



§ 2000cc-1(a);[15] <u>see also</u> <u>Sossamon v. Lone Star State of Texas</u>, 560 F.3d 316, 331-332 (5th Cir. 2009).

       The first question, then, is whether the policies at issue "substantially burden" the exercise of Plaintiff's religious rights. It is certainly arguable that the Department of Mental Health policies allowing Plaintiff to exercise his religious beliefs and practices of his religion, to include being allowed to perform his five daily and Friday prayers, being allowed to possess religious books and materials, a Kufi, a prayer rug, afforded a Muslim diet, and the ability to participate in the Ramadan fast, with the only exceptions being that Plaintiff cannot participate with other Muslims in group prayers or meetings without a leader being present and not being provided with the "oils" he wants, does not impose a "substantial burden" on Plaintiff's exercise of his religious beliefs. <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 720 (2005) [RLUIPA's institutionalized persons provisions was intended to alleviate only "exceptional" burdens on religious exercise]; <u>cf</u>. <u>Nicholas v. Ozmint</u>, No. 04-22471, 2006 WL 895017 (D.S.C. Mar. 31, 2006) [No substantial burden found where, although plaintiff was not allowed unlimited number of religious texts, plaintiff could possess the central book of his faith], <u>aff'd</u>, 2006 WL 3057360 (4th Cir. Oct. 26, 2006); <u>Lyng v. Northwest Indian Cemetery Protective</u>

---

    [15]The Defendants correctly note that the RLUIPA does not provide a cause of action against individual Defendants in their individual capacities. <u>See</u> <u>Haight v. Thompson</u>, _____ F.3d _____, 2014 WL 3973675 at * * 12-13 (6th Cir. 2014); <u>Stewart v. Beach</u>, 701 F.3d 1322, 1334 (10th Cir. 2012); <u>see also</u> <u>Malik v. Ozmint</u>, No. 07-387, 2008 WL 701517, * 12 (D.S.C. Feb. 13, 2008). However, Plaintiff can pursue his claim under the RLUIPA against the Defendants in their official capacities, both for damages and for injunctive relief. <u>Malik</u>, 2008 WL 701517, at * 13. Giving Plaintiff's complaint the liberal construction to which he is entitled as a <u>pro</u> <u>se</u> litigant, the undersigned has assumed for purposes of summary judgment that Plaintiff has sued the Defendants under the RLUIPA in their official capacities. However, as was the case with Plaintiff's constitutional claim, the "SCDOC Chaplain Services" is not a proper party Defendant under this claim. <u>Cf</u>. footnote 5, <u>supra</u>.



Ass'n, 485 U.S. 439, 450-451 (1988) [A government regulation does not substantially burden religious activity when it only has an incidental effect that makes it more difficult to practice the religion]; Baranowski v. Hort, 486 F.3d 112, 124-125 (5th Cir. 2007)[Refusal to allow Jewish inmates to congregate when rabbi or outside volunteer was not present, was not a substantial burden]; Countryman v. Palmer, No. 11-852, 2012 WL 4340659 at * 4 (D.Nev. Aug. 7, 2012)(citing Adkins v. Kasper, 393 F.3d 559 (5th Cir. 2009), cert. denied, 125 S.Ct. 2549 (2005)[Held prison did not place substantial burden on Plaintiff's request to congregate with other members of his faith when no outside volunteer was present]), adopted by, 2012 WL 4339048 (D.Nev. Sept. 19, 2012).

However, even assuming for purposes of summary judgment, and to allow for a further discussion of Plaintiff's claims, that the policies at issue do place a substantial burden on Plaintiff's exercise of his religious beliefs, the Defendants have met their burden of presenting evidence to demonstrate that the policies at issue are in furtherance of a compelling governmental interest and are the least restrictive means of furthering that compelling governmental interest. Versatile v. Johnson, No. 09-120, 2011 WL 5119259, * 4 (E.D.Va. Oct. 27, 2011)[Once a substantial burden is shown, the burden is on the defendant to show the practice at issue is the least restrictive means of furthering a compelling governmental interest], aff'd by, 474 Fed. Appx. 385 (4th Cir. 2012), cert. denied, 113 S.Ct. 1261 (2013).

First, a compelling governmental interest in not allowing group prayers and sessions to be led by inmates has been recognized by the courts on many occasions for the reasons set forth by Sipes in her affidavit. See generally, Shabazz, 157 Fed.Appx. at 946 [Upholding restriction of not allowing Plaintiff to personally perform religious services "upon recognition that prison security may



be jeopardized if an inmate is put in a position of religious leadership over other inmates, or if an inmate has the opportunity to use religious services to engage in disruptive communications."]; Rodgers, Nos. 09-1962 & 10-3110, 2011 WL 4459092 at * 7 ["Restricting group meetings may be necessary to prevent the possibility of riots or gang meetings."]; Johnson, 863 F.2d at 1308 [Regulation prohibiting inmates from conducting their own religious services permissible]; Jones, 590 F.2d at 296 ["Appropriate restrictions on chapel use, including requiring the presence of an outside sponsor for chapel meetings, are reasonable to maintain order and security"]; Cooper v. Tard, 855 F.2d 125, 129 (3rd Cir. 1988). The Defendants have also met their burden of showing that the process used is the least restrictive means for addressing this issue, as group prayers and meetings are not prohibited; they are only prohibited from being led by fellow detainees. Plaintiff and/or other Muslim inmates are able to participate in the group sessions Plaintiff desires by having an outside leader selected to conduct these sessions. According to the evidence before the Court, Plaintiff has simply failed to avail himself of this option. Cf. Treece, 2010 WL 3781726, at * 13 ["There is no affirmative duty requiring that prison administrators provide each inmate with a spiritual counselor of his choice], citing Allen v. Toombs, 827 F.3d 563, 569 (9th Cir. 1987); see also Countryman, 2012 WL 4340659, at * 4 [Rejecting view that prison personnel are obligated under the RLUIPA to provide group services when requested by detainees].

       The Defendants have also shown a compelling interest in not allowing Plaintiff to possess DVDs or CDs, from which sharp objects can be derived for use as weapons, and that the restriction on Plaintiff having "oils" is also supported by a compelling governmental interest. The restriction on Plaintiff having DVDs and/or CDs is a minimal inconvenience since he is otherwise



allowed to possess books and publications addressing his religious beliefs and practices, while the prohibition on possession of "oils" is also a least restrictive prohibition considering the numerous other opportunities Plaintiff is afforded to practice his Muslim faith as is set forth in the evidence. Cf. Banks v. Beard, No. 10-1480, 2013 WL 5465165, at * 5, 8 (M.D.Pa. Sept. 30, 2013) [Noting that the "use of scented oil/perfume is a recommended practice of [Muslims], however , it is entirely optional and not mandatory"]; see also Cutter, 544 U.S. at 720 [RLUIPA's institutionalized persons provisions was intended to alleviate only "exceptional" burdens on religious exercise]. A reviewing court must not substitute "its judgment in place of the experience and expertise of prison officials"; Hoevenaar v. Lazaroff, 422 F.3d 366, 370 (6th Cir. 2006); and as the United States Supreme Court held in Cutter v. Wilkinson;

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests . . . . [Congress] anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of cost and limited resources." . . .

Cutter, 544 U.S. at 722.

See also Treece, 2010 WL 3781726 [Where the court has previously relied on, and found controlling, cases from a prison setting in addressing religious rights for SVPTP residents].

Therefore, even if the Court were to find a genuine issue of fact with respect to whether the cited rules and policies "substantially burden" Plaintiff's exercise of his religious rights; but see Shabazz, 157 Fed. App. at 496; Savko, 749 F.Supp. at 1409; Rodgers, 2011 WL 4459092, at * 7; Johnson Bey, 863 F.2d 1308; as the Defendants have met their burden of showing that the



policies at issue are the least restrictive means of furthering a compelling governmental interest, they are entitled to summary judgment on Plaintiff's RLUIPA claim.

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**, without prejudice.


The parties are referred to the Notice Page attached hereto.


_____
Bristow Marchant
United States Magistrate Judge

September 16, 2014
Charleston, South Carolina

23



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

